# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

STATES OF NEW YORK, CONNECTICUT, NEW JERSEY, RHODE ISLAND and WASHINGTON, and COMMONWEALTHS OF MASSACHUSETTS and VIRGINIA,

    Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF JUSTICE; and WILLIAM P. BARR, in his official capacity as Attorney General of the United States,

    Defendants.

No. 18-cv-6471 (ER)

---

CITY OF NEW YORK,

    Plaintiff,

    v.

WILLIAM P. BARR, in his official capacity as Attorney General of the United States of America, and the UNITED STATES DEPARTMENT OF JUSTICE,

    Defendants.

No. 18-cv-6474 (ER)

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.    Plaintiffs Have Standing to Challenge the FY 2018 Certification of Compliance with Additional Statutes. ........................................................................................................... 3

    II.    Defendants Lack Statutory Authority to Impose the Additional Conditions. ................. 5

        A.    Byrne JAG is a Formula Program That Gives Defendants Minimal Power to Deviate from Congress's Chosen Distribution Scheme. ....................................................... 5

        B.    The Additional Conditions Are Not Authorized by 34 U.S.C. § 10102(a)(6). ........... 8

    III.    The Additional Conditions Violate 34 U.S.C. § 10228(a). ........................................... 17

    IV.    Defendants' Imposition of the Additional Conditions Violates the Constitution's Separation of Powers. ....................................................................................................... 20

    V.    Defendants' Decision to Impose the Additional Conditions was Arbitrary and Capricious. ........................................................................................................................ 20

    VI.    The Additional Conditions Violate the Spending Clause. ............................................ 24

        A.    The Additional Conditions are Neither Related to, Nor Sufficiently Tailored to Address, the Particular Purpose of the Byrne-JAG Program. ............................................ 24

        B.    The Additional Conditions are Unconstitutionally Ambiguous. ............................... 26

    VII.    Plaintiffs Are Entitled to Declaratory, Mandamus, and Injunctive Relief. ................... 27

CONCLUSION .................................................................................................................. 29

# TABLE OF AUTHORITIES

CASES

*Ali v. Federal Bureau of Prisons,*
    552 U.S. 214 (2008) .................................................................................................18, 19

*Arizona v. United States,*
    567 U.S. 387 (2012) .............................................................................................................25

*Babbitt v. United Farm Workers Nat'l. Union,*
    442 U.S. 289 (1979) .........................................................................................................4, 5

*Benning v. Georgia,*
    391 F.3d 1299 (11th Cir. 2004) ........................................................................................27

*California ex rel. Becerra v. Sessions,*
    No. 17 Civ. 04701 (WHO), 2018 WL 6069940 (N.D. Cal. Nov. 20, 2018) ...........................28

*Carey v. Klutznick,*
    637 F.2d 834 (2d Cir. 1980) ................................................................................................4

*Charles v. Verhagen,*
    348 F.3d 601 (7th Cir. 2003) ............................................................................................27

*Citizens Against Casino Gambling in Erie Cty. v. Chaudhuri,*
    802 F.3d 267 (2d Cir. 2015) ..............................................................................................23

*City and Cty. of San Francisco v. Sessions and California v. Sessions,*
    349 F. Supp. 3d 924 (N.D. Cal. 2018) ........................................................................ *passim*

*City and Cty. of San Francisco v. Sessions and California v. Sessions,*
    Nos. 18-cv-05146 and 18-cv-05169,
    2019 WL 1024404 (N.D. Cal. Mar. 4, 2019) ............................................................... *passim*

*City of Chicago v. Sessions,*
    321 F. Supp. 3d 855 (N.D. Ill. 2018) .................................................................................4

*City of Chicago v. Sessions,*
    888 F.3d 272 (7th Cir. 2018) ....................................................................................... *passim*

*City of Los Angeles v. Sessions,*
    No. 18-cv-07347-R-JC (C.D. Cal. Feb. 15, 2019) ................................................................2

*City of Philadelphia v. Attorney General of the United States,*
    916 F.3d 276 (3d Cir. 2019) ........................................................................................ *passim*

*City of Philadelphia v. Sessions*,
    280 F. Supp. 3d 579 (E.D. Pa. 2017) ...........................................................................24, 25

*City of Philadelphia v. Sessions*,
    309 F.Supp.3d 289 (E.D. Pa. 2018) ...........................................................................11, 24

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016) ...........................................................................................22

*Entergy Nuclear Vermont Yankee, LLC v. Shumlin*,
    733 F.3d 393 (2d Cir. 2013) ....................................................................................28

*F.T.C. v. Tax Club, Inc.*,
    994 F. Supp. 2d 461 (S.D.N.Y. 2014) ...........................................................................2

*Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ...............................................................................................4

*Herman v. RSR Sec. Services, Ltd.*,
    172 F.3d 132 (2d Cir. 1999) ...................................................................................19

*In re Lynch*,
    430 F.3d 600 (2d Cir. 2005) .....................................................................................2

*In re Weber*,
    719 F.3d 72 (2d Cir. 2013) .....................................................................................18

*Mayweathers v. Newland*,
    314 F.3d 1062 (9th Cir. 2002) ................................................................................27

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ...............................................................................................4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...........................................................................................21, 22

*New York v. Dep't of Justice*,
    343 F. Supp. 3d 213 (S.D.N.Y. 2018) ...................................................... *passim*

*New York v. United States Dep't of Comm.*,
    351 F. Supp. 3d 502 (S.D.N.Y. 2019) ...........................................................................4

*NRDC v. Muszynski*,
    268 F.3d 91 (2d Cir. 2001) .....................................................................................23

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ...................................................................................19

*Pennell v. City of San Jose*,
485 U.S. 1 (1988) ..............................................................................4

*Pennhurst State Sch. & Hosp. v. Halderman*,
451 U.S. 1 (1981) ...................................................................... *passim*

*Planned Parenthood of N.Y.C., Inc. v. United States HHS*,
337 F. Supp. 3d 308 (S.D.N.Y. 2018) .................................................21

*Planned Parenthood of Wis., Inc. v. Azar*,
316 F. Supp. 3d 291 (D.D.C. 2018) ...................................................21

*Sharkey v. Quarantillo*,
541 F.3d 75 (2d Cir. 2008)...................................................................21

*Smith ex rel. Est. of Smith v. Fed. Reserve Bank of New York*,
346 F.3d 264 (2d Cir. 2003)................................................................19

*South Dakota v. Dole*,
483 U.S. 203 (1987)............................................................................24

*United States v. California*,
No. 18-16496, 2019 WL 1717075 (9th Cir. Apr. 18, 2019) .................5

*United States v. California*,
314 F. Supp. 3d 1077, 1105 (E.D. Ca. 2018), *aff'd in part, rev'd in part on other grounds and remanded*, No. 18-16496, 2019 WL 1717075 (9th Cir. Apr. 18, 2019) ..............6

*United States v. Uccio*,
940 F.2d 753 (2d Cir. 1991).......................................................*passim*

*Van Wyhe v. Reisch*,
581 F.3d 639 (8th Cir. 2009) ..............................................................27

**STATUTES**

5 U.S.C. § 706................................................................................20, 21

8 U.S.C. § 1373......................................................................... *passim*

28 U.S.C. § 510....................................................................................9

34 U.S.C. § 10102..................................................................... *passim*

34 U.S.C. § 10110...............................................................................10

34 U.S.C. § 10121...............................................................................19

34 U.S.C. § 10122..........................................................................19, 20

34 U.S.C. § 10141 ..............................................................................................10

34 U.S.C. § 10152 ........................................................................................ *passim*

34 U.S.C. § 10153 ........................................................................................ *passim*

34 U.S.C. § 10156 ........................................................................................6, 15

34 U.S.C. § 10228 ........................................................................................ *passim*

34 U.S.C. § 10444 ..............................................................................................10

34 U.S.C. § 40912 ........................................................................................13, 14

34 U.S.C. § 40914 ..............................................................................................13

Comprehensive Crime Control Act of 1984,
    Pub. L. No. 98-473, 98 Stat. 1837 (1984)........................................................10

Justice System Improvement Act,
    Pub. L. No. 96-157, § 2, 93 Stat. 1167 (1979).................................................19

Omnibus Crime Control and Safe Streets Act of 1968,
    Pub. L. No. 90-351, 82 Stat. 197 (1968).........................................................19

## OTHER AUTHORITIES

Exec. Order 13809, 82 Fed. Reg. 41499 (Aug. 28, 2017) .........................................14

H.R. 728, 104th Cong. (1995).................................................................................17

H.R. Rep. 109-233 (2005) ......................................................................................17

**INTRODUCTION**

In 2017, Defendants sought to advance the federal government's immigration policy preferences by imposing several conditions on vital funding that Congress apportioned among states and localities based on a mandatory statutory formula. Defendants' aggressive assertion of discretionary power over that program, called the Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG"), was rejected by courts around the country, including this Court, several district courts, and two courts of appeals. In 2018, Defendants doubled down: re-imposing the enjoined 2017 conditions[1] and adding three *new* immigration-related conditions (the "Additional Conditions"),[2] even though Defendants essentially concede that this Court's prior ruling necessarily means that the 2018 iterations of the enjoined 2017 conditions are unlawful.[3]

Defendants' arguments in favor of the 2018 Additional Conditions fare no better—because they are, in large measure, the same arguments the Court already rejected. The leading argument Defendants advance is that 34 U.S.C. § 10102(a)(6) is a vast reserve of previously-untapped power sufficient to commandeer formula grant programs to advance federal immigration policy

---

[1] The Fiscal Year ("FY") 2017 conditions, described in this brief as the "Original Conditions," include the Notice (Trasande/Holt Decl. Ex. 1 (FY 2017 Special Condition ¶¶ 55(1)(b), 56(1)(b))), Access (Trasande/Holt Decl. Ex. 1 (FY 2017 Special Condition ¶¶ 55(1)(a) and 56(1)(a))), and Section 1373 Conditions (Trasande/Holt Decl. Ex. 1 (FY 2017 Special Condition ¶¶52-54)) imposed on FY 2018 grants that remain the same in substance and practical effect as those originally imposed in FY 2017 and enjoined as unlawful by this Court. *See* Pls.' Mem. of Law in Supp. of Pls.' Mot. for Partial Summ. J. at 6-9 (ECF No. 143) ("Pls.' FY 2018 Mem."). All page numbers cited are to the internal numbering applied by the author of the document, not that applied by the CM/ECF system.

[2] Plaintiffs' prior briefing explained that the "Additional Conditions" comprise the Communication Prohibition (Trasande/Holt Decl. Ex. 53 (FY 2018 Special Condition ¶ 44)), the Policy Collection and Reporting Condition (Trasande/Holt Decl. Ex. 53 (FY 2018 Special Condition ¶ 47)) and the Certification of Compliance with Additional Statutes (Trasande/Holt Decl. Exs. 76-77 at AR01210-AR01211 (Appendix C, FY 2018 Local Solicitation at 44-45); AR01267-AR01268 (Appendix C, FY 2018 State Solicitation at 44-45)). *See* Pls.' FY 2018 Mem. at 9-13 (describing conditions). Defendants refer to these three conditions respectively as the "public-disclosure condition", "the information collection condition" and the "FY 2018 certification requirement," collectively as the "FY 2018 Conditions." *See* Defs.' Mem. of Law in Opp'n To Pls.' Mot. for Partial Summ. J. and in Supp. of Defs.' Mot. to Dismiss, or Alternatively, Mot. for Partial Summ. J. at 9-13 (ECF No. 147) ("Defs.' FY 2018 Opp'n"). All ECF citations are to No. 18-cv-6471 (ER) unless otherwise noted.

[3] *See* Defs.' FY 2018 Opp'n at 11 (declining to present new arguments on these conditions and noting preservation of issue for appellate review).

preferences.[4] But this Court and two courts of appeals have already rejected that argument in connection with the enjoined Original Conditions as have the Central and Northern Districts of California in connection with their review of the new 2018 Additional Conditions.[5]

Defendants' other arguments fail. Defendants' attempt to transform generic permission for one official to "maintain liaison" with state and local governments into a *source of power* over those governments is absurd on its face—and even more so in the context of a formula grant. Defendants' sole argument in defense of the expansive new Certification of Compliance with Additional Statutes is that Plaintiffs lack standing because the Department of Justice ("DOJ") "has not sought to enforce the certifications against any specific person in this case." Defs.' FY 2018 Opp'n at 13. This new certification does not appear optional;[6] any prospective grantee must sign it or lose vital federal funding. Plaintiffs are subject to this unconstitutional condition *now*, and thus are injured. *See, e.g.*, *New York v. Dep't of Justice,* 343 F. Supp. 3d 213, 243 (S.D.N.Y. 2018). And, Defendants offer no defense on the merits for this new certification—thus conceding Plaintiffs' arguments that it is unlawful under the Court's construction of 34 U.S.C. § 10153(a)(5)(D). *See* Pls.' FY 2018 Mem. at 16-18; *see also In re Lynch*, 430 F.3d 600, 604 (2d Cir. 2005) ("[Petitioner] presents no arguments to the contrary in her briefs, and thus apparently concedes this point."); *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 n. 1 (S.D.N.Y. 2014).

---

[4] *See* Defs.' FY 2018 Opp'n at 14-18.

[5] *See New York v. Dep't of Justice*, 343 F. Supp. 3d 213, 228 (S.D.N.Y. 2018); *see also, City of Philadelphia v. Attorney General of the United States*, 916 F.3d 276, 287-88 (3d Cir. 2019) (review of Original Conditions); *City of Chicago v. Sessions*, 888 F.3d 272, 286-87 (7th Cir. 2018) (review of Original Conditions); *City and Cty. of San Francisco v. Sessions and California v. Sessions*, 349 F. Supp. 3d 947-48 (N.D. Cal. 2018) (review of Original Conditions) ("*California Actions");" City of Los Angeles v. Sessions*, No. 18-cv-07347-R-JC at 4-5 (C.D. Cal. Feb. 15, 2019) (review of Additional Conditions; attached as Trasande/Holt Decl. Ex. 83); *City and Cty. of San Francisco v. Sessions and California v. Sessions*, Nos. 18-cv-05146 and 18-cv-05169, 2019 WL 1024404, *7 (N.D. Cal. Mar. 4, 2019) ("*California Actions II*") (review of Additional Conditions noting once again that the "[Department of Justice's] interpretation of Section 10102(a)(6) [is] contrary to the plain meaning of the statute," and that Defendants had "not shown why the legal reasoning concerning the fiscal year 2017 conditions does not apply with equal force in 2018.")

[6] If Defendants are now claiming this certification is optional, they should be bound by that concession.

Nor do Defendants contest that declaratory and injunctive relief (including mandamus) are appropriate if the Court otherwise rules for Plaintiffs.

For these and other reasons, the Court should grant Plaintiffs' Motion for Summary Judgment and deny Defendants' Motion.

## ARGUMENT

### I. Plaintiffs Have Standing to Challenge the FY 2018 Certification of Compliance with Additional Statutes.

Defendants assert that Plaintiffs have suffered no "injury in fact" from the FY 2018 Certification of Compliance with Additional Statutes, because "DOJ has not sought to enforce the certifications against any specific person in this case" and "[n]o case has been brought by the United States allegeing [sic] a violation of this certification." Defs.' FY 2018 Opp'n at 13. Defendants' contention is nonsensical.

At the outset, it is not clear whether Defendants are now taking the position that a prospective grantee need not sign the Certification of Compliance with Additional Statutes in order to receive the grantee's allocation of Byrne JAG funds. If Defendants' now view the certification as entirely optional—and that a grantee may ignore it and still receive Byrne JAG funds— Defendants should simply say so.

If instead Defendants continue to insist that prospective grantees sign this expansive unlawful certification, as a precondition to receiving Byrne JAG funding, then their assertion that prospective grantees lack standing to challenge that grant condition is plainly wrong. Plaintiffs face concrete, certain injury as a result of the unworkable choice imposed by Defendants: either comply with the unlawful and unconstitutional certification requirement, or suffer the loss of critical federal funding. *See* Pls.' FY 2018 Mem. at 29-30. This injury satisfies Article III's injury-in-fact requirement. "[T]he Hobson's choice that now confronts [Plaintiffs]—whether to suffer

this injury or else decline much-needed grant funds—is not a choice at all and is itself sufficient to establish irreparable harm." *New York*, 343 F. Supp. 3d at 243-44 (alteration in original) (quoting *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 878 (N.D. Ill. 2018)) (recognizing the violation of the separation of powers as a "constitutional injury")[7]; *see also Carey v. Klutznick*, 637 F.2d 834, 838 (2d Cir. 1980) (finding that the showing by New York City and New York State that they would lose funds under a federal revenue-sharing program adequately alleged concrete harm); *New York v. United States Dep't of Comm.*, 351 F. Supp. 3d 502, 608 (S.D.N.Y. 2019) (describing the loss of funding from federal programs as "a classic form of Article III injury in fact"). Defendants cannot insulate from review an unlawful grant condition that Plaintiffs must accept in order to receive funding, simply by asserting that they are not currently prosecuting a violation of the condition. *See Babbitt v. United Farm Workers Nat'l. Union*, 442 U.S. 289, 298 (1979) ("One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.") (internal citations and quotations omitted).

Regardless of whether or not Defendants are currently requiring compliance with the certification as a condition for receiving Byrne JAG funding, plaintiffs have certainly showed a likelihood of future enforcement. *See also Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (standing exists where plaintiff demonstrates that defendant's behavior will likely occur or continue "if unchecked by the litigation"); *Pennell v. City of San Jose*, 485 U.S. 1, 7-8 (1988) (finding standing where plaintiffs had not yet been subject to requirements of the challenged rent control ordinance, but showed a likelihood of future

---

[7] Although this Court considered the relevant harm in the context of injunctive relief, an injury that constitutes "irreparable harm" will also suffice to establish injury-in-fact, which imposes a less stringent standard. *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 155 (2010) (finding that the increased risk of crop contamination created by defendant's conduct was "sufficiently concrete" to establish standing to seek injunctive relief, but was not sufficiently certain to establish irreparable harm warranting an injunction).

enforcement); *Babbitt*, 442 U.S. at 298 (standing established where there is a "realistic danger [to Plaintiffs] of sustaining a direct injury."). As a general matter, despite loss after loss before courts across the country, Defendants have insisted on imposing the Original Conditions and then expanding them to include the Additional Conditions.[8] Indeed, after this Court entered its order concerning the FY 2017 Byrne JAG grants, Defendants sought to modify the Court's order *precisely so they could enforce those conditions in the future*. *See* Letter from D. Mauler to the Hon. Edgardo Ramos, U.S. Dist. J., ECF No. 117. Defendants have a record of accusing state and local jurisdictions of violating federal immigration law, *see, e.g.*, *New York,* 343 F. Supp. 3d at 223; Pls.' FY 2018 Mem. at 20-21 & n.39, and even sued the State of California to nullify California law on the basis that it was preempted by the precise statutes invoked in the Certification of Compliance with Additional Statutes. *See United States v. California*, No. 18-16496, 2019 WL 1717075, at *13-15 (9th Cir. Apr. 18, 2019) (largely rejecting Defendants' claims and noting, *inter alia*, that "refusing to help is not the same as impeding").

## II.    Defendants Lack Statutory Authority to Impose the Additional Conditions.

### A.    Byrne JAG is a Formula Program That Gives Defendants Minimal Power to Deviate from Congress's Chosen Distribution Scheme.

As this Court has recognized, Byrne JAG is a formula grant program designed to provide a reliable stream of funding to states and localities to address specific law enforcement issues at the local level. Grantees may use the formula funding to meet their specific needs within the eight broad statutory funding categories identified by Congress, which include law enforcement, crime

---

[8] Indeed, Defendants specifically excluded Plaintiffs from a "Special Notice" concerning FY 2018 Byrne JAG funding informing certain grantee jurisdictions that the DOJ does not intend to enforce the certification requirements against them while litigation over the legality of the requirements is pending. *See* Trasande/Holt Decl. Ex. 85 at 3 (exhibit numbering resumes from previously filed attorney declarations (*see generally* ECF No. 58 and 58-1 to 58-51, ECF No. 93-2 to 93-10 and ECF No. 133 and 133-1 to 133-32)). Even jurisdictions covered by the Special Notice are not exempt from enforcement in the future. The Notice explicitly reserves Defendants' right to enforce the condition at a later date "[i]f the posture of the pending litigation changes (or if the pending litigation is resolved)." *Id.*

prevention and education, and drug treatment. *New York*, 343 F. Supp. 3d at 221. None of those statutorily identified purposes pertains to federal immigration law.[9] *See* 34 U.S.C. § 10152(a)(1). Nor have grantees used their funding in such a fashion. *See* 56.1 ¶¶ 254-292 (ECF No. 143-1). All such funding "shall" be allocated "pursuant to a statutory formula based on the state's population and violent crime statistics," and, in turn, directed to state and local identified needs within the categories specified. *New York*, 343 F. Supp. 3d at 227 (finding that 34 U.S.C. § 10156(a)(1) "does not give the Attorney General discretion to award or withhold Byrne JAG grants or determine the conditions under which they are disbursed").[10] Defendants have offered the Court no reason, let alone a compelling one, to deviate from the Court's clear holdings. *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (noting that the court will adhere to its own prior rulings in a given case "absent cogent or compelling reasons to deviate" from those rulings (citations omitted)).

Defendants wholly ignore that Byrne JAG is a formula grant, and attempt to recast the grant program as one that is discretionary through which states may be obligated to participate in immigration enforcement. Defendants' generic description of the Immigration and Nationality Act ("INA") does nothing to establish that that Act has any bearing on the Byrne JAG formula grant program. The INA itself (because of the anti-commandeering doctrine) does not include any power to compel states and localities to act. *See United States v. California*, 314 F. Supp. 3d 1077, 1105 (E.D. Ca. 2018) ("[s]tanding aside does not equal standing in the way"), *aff'd in part, rev'd in part on other grounds and remanded*, No. 18-16496, 2019 WL 1717075 (9th Cir. Apr. 18, 2019). And

---

[9] Nor is immigration enforcement an area of state regulation in the first place despite Defendants' best efforts to recast it as such. *See* Pls.' FY 2018 Mem. at 17-18.

[10] *See also City of Philadelphia v. Attorney General of the United States*, 916 F.3d 276, 287 (3d Cir. 2019) (finding "no authority for the Challenged Conditions in the Byrne JAG statute"); *City of Chicago v. Sessions*, 888 F.3d 272, 284 (7th Cir. 2018) (finding that no provision of the Byrne JAG statute "grant[s] the Attorney General the authority to impose conditions that require states or local governments to assist in immigration enforcement, nor to deny funds to states or local governments for the failure to comply with those conditions"); *California Actions*, 349 F. Supp. 3d at 945-57 (quoting *City of Chicago*, *supra*).

the statutes Defendants reference in the Additional Conditions do not even purport to do so. *Compare* Defs.' FY 18 Opp'n at 5-7 *with* Pls.' FY 2018 Mem. at 17-18.

Defendants, instead, argue that the authority for Additional Conditions can be inferred from generic statutory phrases such as "maintaining liaison" in 34 U.S.C. § 10102(a)(2). *See* Defs.' FY 2018 Opp'n at 17. In fact, there is nothing in the language of Section 10102(a)(2) that "naturally empower[s]" or "naturally entitle[s]" Defendants to compel State and local authorities to do anything. *Contra id.* The phrase "maintain liaison" indicates bilateral conversations or meetings that are voluntary for both participants—Congress would not have described *forced communication* as a "liaison." Such an interpretation cannot be reconciled with an Assistant Attorney General's power to "maintain liaison with . . . governments of other nations," 34 U.S.C. § 10102(a)(4), since a foreign government cannot conversely be compelled to meet with or talk to the Assistant Attorney General. As the Northern District of California recently held, "[Section 10102(a)(2)] does not support a broad authority to place the challenged conditions on Byrne JAG grantees," agreeing with both California and San Francisco that "this statutory provision was not intended to empower the [Department of Justice] to impose conditions, and instead was an instruction for the [Assistant Attorney General] to maintain bilateral communications or act as a point of contact with state and local governments." *California Actions II*, 2019 WL 1024404, at *8.

The Court should also reject Defendants' argument with respect to Section 10102(a)(2) for the same reason it previously rejected Defendants' argument with respect to Section 10102(a)(6). The Court held that the power that Defendants insisted was conferred in Section 10102(a)(6) is "much more significant than all of the duties and powers that precede [Section 10102(a)(6)] in the listing." *New York*, 343 F. Supp. 3d at 228-29 (quoting *City of Chicago*, 888 F.3d at 285); *see also*

*City of Chicago*, 888 F.3d at 287 (recognizing the list of authorities in Section 10102 as "a list of otherwise-ministerial powers" in which it "defies reason" to believe Congress placed such power). In other words, the Court already has held that none of the paragraphs of Section 10102, including subsection (a)(2), can possibly be construed to encompass the vast authority over Byrne JAG that Defendants claim.[11] *See also California Actions II*, 2019 WL 1024404, at *10 ("There is no authority in Section 10102 for the DOJ to impose the fiscal year 2018 Byrne JAG [Communication Prohibition] or [Policy Collection and Reporting] conditions based on its authority to place 'special conditions' on grants or its duty to 'maintain liaison' in criminal justice matters.")

### B. The Additional Conditions Are Not Authorized by 34 U.S.C. § 10102(a)(6).

Defendants previously asserted that 34 U.S.C. § 10102(a)(6)—at the end of a long list of ministerial duties of the Assistant Attorney General for the Office of Justice Programs—was a broad grant of power to convert formula grant programs into discretionary ones. This Court and others have soundly rejected that argument. *New York*, 343 F. Supp. 3d at 228-29.[12] That holding is law of the case, and Defendants' mere restatement of arguments that this Court has already rejected cannot disturb that result. *Uccio*, 940 F.2d at 758 (noting that the court will adhere to its own prior rulings in a given case "absent cogent or compelling reasons to deviate" from those rulings (internal quotations omitted)). As the Northern District of California recently recognized in connection with its own review of an FY 2018 challenge to the Byrne JAG Additional

---

[11] In their description of the underlying statutory framework, Defendants reference in passing their authority over the form of the application pursuant to 34 U.S.C. § 10153(a); certifications regarding "all applicable federal laws" in Section 10153(a)(5)(D); the programmatic data and recordkeeping certification in Section 10153(a)(4); and the certification that an applicant has coordinated with affected agencies as stated in Section 10153(a)(5)(C). Defs.' FY 2018 Opp'n at 8. Defendants do not attempt to argue that any of the Additional Conditions are justified by these provisions, and they plainly are not. *See generally* Pls.' FY 2018 Mem. at 16-18, 19-21 (discussing §§ 10153(a)(4), 10153(a)(5)(C)).

[12] *See, e.g.*, *City of Philadelphia*, 916 F.3d at 286-88; *City of Chicago*, 888 F.3d at 285-87; *California Actions*, 349 F. Supp. 3d at 947-48.

Conditions, Defendants "ha[ve] not shown why the legal reasoning concerning the fiscal year 2017 conditions does not apply with equal force in 2018." *California Actions II*, 2019 WL 1024404, at *7.

### i. Defendants' Resort to Generic Delegation Authority Says Nothing About the Meaning of Section 10102(a)(6).

Defendants wrongly assert that Plaintiffs' reading of Section 10102(a)(6) renders the 2006 amendments to Section 10102(a)(6) superfluous. As Plaintiffs have explained earlier, Section 10102(a)(6) reflects a choice by Congress to clarify that the Assistant Attorney General may exercise powers delegated by the Attorney General. Pls.' Mem. of Law in Supp. of Pls.' Mot. for Partial Summ. J. at 23-26 (ECF No. 57) ("Pls.' FY 2017 Mem."); Pls.' Reply Mem. in Supp. of Pls.' Mot. for Partial Summ. J. and in Opp'n to Defs.' Mot. to Dismiss, or Alternatively, Mot. for Summ. J. at 6-9 (ECF No. 93) ("Pls.' FY 2017 Reply"). Defendants counter that any such authorization to exercise delegated power is superfluous because 28 U.S.C. § 510 already gives the Attorney General authority to delegate his powers to subordinate officials. *See* Defs.' FY 2018 Opp'n at 15. But the delegation of power to the Assistant Attorney General in Section 10102(a)(6) predated the 2006 amendments adding the "special conditions" and "priority purposes" language to Section 10102(a)(6). Specifically, 34 U.S.C. § 10102(a)(6) was amended to append the following italicized phrase to previously existing text, indicating that the Assistant Attorney General shall "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, *including placing special conditions on all grants, and determining priority purposes for formula grants*." Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 1152(b), 119 Stat. 2960, 3113 (amending 34 U.S.C. § 10102(a)(6)) (emphasis added). Defendants' argument thus says nothing about the meaning of the 2006 amendments.

Contrary to Defendants' suggestion, it is common for Congress to clarify that grant-making officials at the Department of Justice may exercise power delegated by the Attorney General. The authorization here, for instance, was given to the Assistant Attorney General for Justice Programs when that position was created in 1984. *See* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 603(a), 98 Stat. 1837, 2077-78 (establishing the "Office of Justice Programs" which "shall be headed by an Assistant Attorney General" and enumerating the duties and functions of the Assistant Attorney General).[13] Congress's decision to enact a specific authorization of this type makes sense in light of other statutes providing that the Attorney General has "final authority" over all grants issued by the Office of Justice Programs or any of its components, *see* 34 U.S.C. § 10110(2),[14] but the Director of the Bureau of Justice Assistance ("BJA") has "final authority for all grants, cooperative agreements, and contracts awarded by the Bureau," *id.* § 10141(b). Section 10102(a)(6) clarifies that the Attorney General may delegate the authority provided by Section 10110(2) to the Assistant Attorney General to whom the Director of BJA reports. *See id.* § 10141(b).

### ii. The Additional Conditions Are Not Statutorily Authorized "Special Conditions."

That all of the conditions attached to grantee award letters have been enumerated under a header labeled "Special Conditions" does not inform what Congress intended that term to mean

---

[13] Congress gave other grant-making offices at DOJ similar authorizations. *See, e.g.*, 34 U.S.C. § 10444(7) (providing that the Director of the Violence Against Women Office "[e]xercis[e] such other powers and functions as may be vested in the Director pursuant to this subchapter or by delegation of the Attorney General"); *id.* § 20111(c)(5) (providing that the Director of the Office for Victims of Crime may exercise "[s]uch other functions as the Attorney General may delegate").

[14] 34 U.S.C. § 10110 provides, in relevant part:

> Notwithstanding any other provision of law, during any fiscal year the Attorney General (1) may make grants . . . for the Office of Justice Programs and the component organizations of that Office . . . and (2) shall have final authority over all functions, including any grants . . . for the Office of Justice Programs and the component organizations of that Office.

under Section 10102(a)(6).[15] Congress, the Office of Management and Budget, and other courts, all agree that the phrase "special conditions" is a term of art referring to conditions for "high-risk grantees" with difficulty adhering to existing grant requirements. *See, e.g.*, *City of Philadelphia v. Sessions*, 309 F.Supp.3d 289, 321 (E.D. Pa. 2018); *see also* Pls.' FY 2017 Reply at 9-11 (comparing 28 C.F.R. § 66.12(a)-(b) (2006) *with* 2 C.F.R. § 200.207). In fact, the FY 2018 solicitations for Byrne JAG funding apply this interpretation of "special conditions." *See* Trasande/Holt Decl. Ex. 76 at AR01249-AR01250 (FY 2018 State Solicitation at 26-27) ("[T]hat an applicant poses a higher risk to [the Office of Justice Programs ("OJP")] may affect the funding decision and/or result in additional reporting requirements, monitoring, *special conditions*, withholding of award funds, or other additional award requirements") (emphasis added)); *id.* at AR01192-AR01193 (FY 2018 Local Solicitation at 26-27) (same).

Defendants are likewise mistaken in asserting that the Additional Conditions are merely representative of other Byrne JAG conditions currently in place. The Additional Conditions are fundamentally different from any prior or current condition because all were authorized by a statute or other federal authority governing federal grant-making, or concern the grant-related performance issues of any particular grantee. Specifically, the conditions listed in the State Plaintiffs' award letters fall into one or more of the following three categories:

> (1) conditions authorized by other provisions of the Byrne JAG statute ("Category 1");[16]

---

[15] Defendants are mistaken that Plaintiffs neglect to address the meaning behind the inclusion of "special conditions" and "priority purposes" in the 2006 amendments to 34 U.S.C. § 10102(a)(6). Defs.' FY 2018 Opp'n at 14. Specifically, in their opening brief regarding the FY 2018 Additional Conditions, Plaintiffs incorporate by reference earlier arguments regarding the amendment and how the federal government has historically defined these terms. *See* Pls.' FY 2018 Mem. at 19 n.35 (cross referencing Pls.' FY 2017 Reply, Section II.A.1-2 at 9-16). It is, therefore, Defendants, not Plaintiffs, who fail to adequately define "special conditions" and "priority purposes." As stated earlier, the Court's conclusion about the meaning of 10102(a)(6) made it unnecessary to reach those other issues as to the FY 2017 grant cycle, and doing so would be unnecessary here as well. *See New York,* 343 F. Supp. 3d at 229 n.9. However, Plaintiffs do so for the sake of completing their record here.

[16] Examples of Category One conditions include those that provide guidance as to *how* grantees provide the assistance specified in the Byrne JAG statute to support one or more of the eight program areas identified in the Byrne JAG

(2) conditions authorized by other federal statutes, regulations, or legal authorities that apply either to all federal grantees or recipients of BJA federal funds ("Category 2");[17] and

(3) conditions that are advisory and non-mandatory, or impose certain restrictions on how *disbursed* Byrne JAG funds may be used within the eight broad categories authorized by Congress in the Byrne JAG statute ("Category 3").[18]

*See generally* Trasande/Holt Decl. Ex. 86 (addressing each category that applies to each of the FY 2018 Byrne JAG special conditions).

Each of the conditions that Defendants cite falls within these categories. In contrast, the Additional Conditions simply do not fall into any of these categories.

Each of the five conditions addressed by Defendants in the 2016 New York City and New York State award letters that have remained in place through FY 2018 falls within one of the categories above. Defendants identify Special Conditions regarding the confidentiality of data collected in research using human subjects[19] and data collected in connection with arrest and

---

statute, 34 U.S.C. § 10152(a)(1); 34 U.S.C. § 10153(a)(5)(A), 34 U.S.C. § 10153(b)(1), or conditions that relate to the administration of the grant itself, including the maintenance and reporting of "such data, records, and information (programmatic and financial) as the Attorney General may reasonably require." 34 U.S.C. § 10153(a)(4). *See generally* Trasande/Holt Decl. Ex. 53 ¶¶ 1, 3-5, 7-11, 15, 23-24, 28, 30, 32-33, 37-39, 49, 51, 55-56, 58, 60, 62-64.

[17] Examples of Category Two include statutes requiring all recipients of federal funds to comply with anti-discrimination and environmental laws (*see e.g.* Trasande/Holt Decl. Ex. 53 ¶¶ 18-20, 48, 50) as well as statutes and regulations specific to criminal justice grant recipients (*see e.g.* Trasande/Holt Decl. Ex. 53 ¶¶ 34, 38, 40, 56, 57, 60, 64, 67). *See generally* 34 U.S.C. § 10153(a)(5)(D); Trasande/Holt Decl. Ex. 86.

[18] Where restrictions apply to funding within the eight categories, the area restricted must first be part of a grantee's program narrative or comprehensive law enforcement plan. Such plans include: a description of a grantee's fiscal year funding priorities; programs to be funded; and how specific performance data will be collected. Trasande/Holt Decl. Ex. 76 at AR01243-AR01244 (FY 2018 State Solicitation at 20-21) (emphasis added); s*ee also id.* at AR01186 (FY 2018 Local Solicitation at 20). An example of a non-mandatory condition includes when grantees are encouraged but not required to have a policy prohibiting texting while driving. *See, e.g.*, Trasande/Holt Decl. Ex. 53 ¶¶ 26, 61. Special Conditions restrictions on how disbursed funds can be used within the eight categories include instances in which technical specifications are provided for equipment—e.g., body armor and bulletproof vests—that the grantee can choose but is not required to buy with Byrne JAG funding. Additional examples include instances where funds are used for the DNA testing of evidentiary materials. Should funds be used for that purpose, any resulting eligible profiles must then be uploaded to a DNA database operated by the FBI. *See, e.g.*, *id.* ¶¶ 52-54, Trasande/Holt Decl. Ex.86.

[19] Defendants refer to New York City FY 2016 Special Condition ¶ 29 and New York State FY 2016 Special Condition ¶ 30, which are identical to FY 2017 Special Condition ¶ 31 and FY 2018 Special Condition ¶35. Defs.' FY 2018 Opp'n at 9; *see also* Trasande/Holt Decl. Ex. 1 ¶ 31, Ex. 53 ¶ 35 and Trasande/Holt Decl. Ex. 86.

criminal history[20] that refer to federal regulations and statutes that speak directly to federal grantees and therefore fall within Category 2. Defendants also highlight conditions that require grantees to complete BJA-related training;[21] attend BJA-related training conferences;[22] or refrain from the signature of any internal confidentiality agreement that prohibits the reporting of waste, fraud, or abuse,[23] which are Category 1 conditions at the core of programmatic goals and grant administration.

Similarly, the National Instant Criminal Background Check System ("NICS")[24] and DNA profile disclosure conditions[25] added in FY 2018 that Defendants cite fall within Category 2 and 3 respectively. The statutory scheme establishing the national background check system contains a provision that requires the Attorney General to withhold 5% of a State's Byrne JAG funding "if the State provides less than 90 percent of the records required to be provided under sections 40912 and 40913 of this title," 34 U.S.C. § 40914(b)(2), where the "records" referenced concern characteristics that would render a person's possession of a firearm illegal under federal criminal

---

[20] Defendants refer to New York City FY 2016 Special Condition ¶ 30 and New York State FY 2016 Special Condition ¶ 31, which are identical to FY 2017 Special Condition ¶ 32 and FY 2018 Special Condition ¶ 36. Defs.' FY 2018 Opp'n at 9; *see also* Trasande/Holt Decl. Ex. 1 ¶ 32, Ex. 53 ¶ 36 and Trasande/Holt Decl. Ex. 86..

[21] Defendants refer New York City FY 2016 Special Condition ¶ 32 and New York State FY 2016 Special Condition ¶ 33, which are identical to FY 2017 Special Condition ¶ 34 and FY 2018 Special Condition ¶ 38—all of which address training requirements to increase "task force effectiveness as well as other key issues including privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and accountability." Defs.' FY 2018 Opp'n at 9, 20; *see also* Trasande/Holt Decl. Ex. 1 ¶ 34, Ex. 53 ¶ 38 and Trasande/Holt Decl. Ex. 86.

[22] Defendants refer to New York City FY 2016 Special Condition ¶ 33 and New York State FY 2016 Special Condition ¶ 34, which are identical to FY 2017 Special Condition ¶ 35 and FY 2018 Special Condition ¶49. Defs.' FY 2018 Opp'n at 9, 20; *see also* Trasande/Holt Decl. Ex. 1 ¶ 35, Ex. 53 ¶ 49 and Trasande/Holt Decl. Ex. 86.

[23] Defendants refer to New York City FY 2016 Special Condition ¶ 20 and New York State FY 2016 Special Condition ¶ 20, which are identical to FY 2017 Special Condition ¶ 22 and FY 2018 Special Condition ¶ 24. Defs.' FY 2018 Opp'n at 20; *see also* Trasande/Holt Decl. Ex. 1 ¶ 22, Ex. 53 ¶ 24 and Trasande/Holt Decl. Ex. 86.

[24] Defendants refer to FY 2018 Special Condition ¶ 40 relating to data-gathering and compliance with the National Instant Criminal Background Check Systems. Defs.' FY 2018 Opp'n at 17; *see also* Trasande/Holt Decl. Ex. 86.

[25] Defendants refer to FY 2018 Special Condition ¶ 59. Defs.' FY 2018 Opp'n at 9; *see also* Trasande/Holt Decl. Ex. 86.

law, *see* 34 U.S.C. § 40912(b)(1)(C). The DNA profile disclosure condition only applies to grantees that choose to use Byrne JAG funds for DNA testing of evidentiary materials. Trasande/Holt Decl. Ex. 53 ¶ 59.

Defendants also identify certain "goal-oriented" conditions that all fall within Category 2 in that they apply to federal grantees generally: for example, combating human trafficking;[26] ensuring compliance with federal civil rights statutes;[27] and complying with the National Environmental Policy Act.[28] *See generally* Trasande/Holt Decl. Ex. 86. Defendants also point to Category 3 conditions that set forth purchase restrictions or requirements regarding military weapons,[29] or body armor,[30] all of which a jurisdiction can avoid by not buying such equipment

---

[26] Defendants refer to New York City FY 2016 Special Condition ¶ 9 and New York State FY 2016 Special Condition ¶ 9, which are identical to FY 2017 Special Condition ¶ 10 and FY 2018 Special Condition ¶ 12. Defs.' FY 2018 Opp'n at 9, 20; *see also* Trasande/Holt Decl. Ex. 1 ¶ 10, Ex. 53 ¶ 12 and Trasande/Holt Decl. Ex. 86.

[27] Defendants refer to New York City FY 2016 Special Condition ¶¶ 15-16 and New York State FY 2016 Special Condition ¶¶ 15-16, which are identical to FY 2017 Special Condition ¶¶ 16-18 and FY 2018 Special Condition ¶¶ 18-20. Defs.' FY 2018 Opp'n at 9, 20; *see also* Trasande/Holt Decl. Ex. 1 ¶¶ 16-18, Ex. 53 ¶¶ 18-20 and Trasande/Holt Decl. Ex. 86.

[28] Defendants refer to New York City FY 2016 Special Condition ¶ 35 and New York State FY 2016 Special Condition ¶ 36, which are identical to FY 2017 Special Condition ¶ 37 and FY 2018 Special Condition ¶ 50. Defs.' FY 2018 Opp'n at 9, 17; *see also* Trasande/Holt Decl. Ex. 1 ¶ 37, Ex. 53 ¶ 50 and Trasande/Holt Decl. Ex. 86.

[29] Defendants refer to New York City FY 2016 Special Condition ¶ 49, which is identical to New York State FY 2016 Special Condition ¶ 43. Defs.' FY 2018 Opp'n at 9. As originally written, this was a Category 3 condition. Executive Order 13688 underlying the 2016 New York State Special Condition ¶ 49 was revoked on August 28, 2017. The order itself established a working group to discuss a variety of issues regarding controlled equipment such as developing a database to track acquisitions and procedures for returning decommissioned weapons acquired back to the federal government. *See* Exec. Order 13809, *Presidential Executive Order on Restoring State, Tribal, and Local Law Enforcement's Access to Life-Saving Equipment and Resources*, 82 Fed. Reg. 41499 (Aug. 28, 2017), *available at*, https://www.whitehouse.gov/presidential-actions/presidential-executive-order-restoring-state-tribal-local-law-enforcements-access-life-saving-equipment-resources/. Following this change, both FY 2017 Special Condition ¶ 45 and FY 2018 Special Condition ¶ 57 merely reflect the prohibited expenditures specified in 34 U.S.C. § 10152, rendering these Category 1 conditions now versus how they existed in 2016. *See also* Trasande/Holt Decl. Ex. 1 ¶ 45, Ex. 53 ¶ 57 and Trasande/Holt Decl. Ex. 86.

[30] Defendants refer to New York City's FY 2016 Special Conditions ¶¶ 38-39, which are identical to New York State FY 2016 Special Conditions ¶¶ 39-40 and FY 2017 Special Conditions ¶¶ 40-41 and FY 2018 Special Conditions FY ¶¶ 53-54. Defs.' FY 2018 Opp'n at 9, 20; *see also* Trasande/Holt Decl. Ex. 1 ¶¶ 40-41, Ex. 35 ¶¶ 53-54 and Trasande/Holt Decl. Ex. 86. These requirements provide that, if body armor is purchased with Byrne JAG funds, the jurisdiction must have a written mandatory-wear policy for all uniformed officers on duty and any body armor purchased with Byrne JAG funds must be made in the United States and compliant with the National Institute of Justice standards.

using Byrne JAG monies. Trasande/Holt Decl. Ex. 76 at AR01243-AR01244 (2018 State Solicitation at 20-21) (emphasis added); s*ee also* Trasande/Holt Decl. Ex. 76 at AR01186 (2018 Local Solicitation at 20). By contrast, grantees have no choice but to comply with the Additional Conditions if they want Byrne JAG funding; it is an all-or-nothing proposition. Finally, Defendants' reference to a Special Condition encouraging grantees to ban their employees from texting while driving also fails as it is on its face an advisory condition that does not affect the disbursement of Byrne JAG funding.[31]

Defendants again advance the mystifying argument that there is a "built-in structural check" over the imposition of unreasonable conditions as states and localities could merely decline to participate and "thus, effectively annul—the Byrne JAG Program were this authority invoked to impose unreasonable conditions." Defs.' FY 2018 Opp'n at 18. Defendants again ignore that turning down the grant funds would result in their reallocation. *See, e.g.*, 34 U.S.C. § 10156(f). A jurisdiction should not have to forego monies that Congress mandated that it receive because it declines to follow an unlawful condition Defendants imposed.

### iii. Defendants' Statutory Authority to Express "Priority Purposes" for Byrne JAG Funding Does Not Authorize Defendants to Withhold Funding From Jurisdictions That Do Not Implement the Additional Conditions.

Similarly, Defendants' recycled interpretation of "priority purposes" as permitting federal grant monies to go to those state and local jurisdictions that assist in furthering relevant federal purposes, Defs.'s FY 2018 Opp'n at 18, cannot be reconciled with their own practice in administering the Byrne JAG program. First, the "priority purposes" identified by the BJA in both

---

[31] Defendants refer to New York City's FY 2016 Special Conditions ¶ 22, which are identical to New York State FY 2016 Special Conditions ¶ 22 and FY 2017 Special Conditions ¶ 24 and New York State FY 2018 Special Condition at ¶ 26. Defs.' FY 2018 Opp'n at 9; *see also* Trasande/Holt Decl. Ex. 1 ¶ 24, Ex. 53 ¶ 26 and Trasande/Holt Decl. Ex. 86.

its state and local solicitations were not binding. BJA merely invited or encouraged grantees to consider addressing certain areas of interest to the BJA within their proposed comprehensive strategic law enforcement plans, which are drafted by grantees following a self-directed assessment of the law enforcement problems arising within their jurisdictions.[32] *See* Trasande/Holt Decl. Ex. 76 at AR01243-AR01244 (FY 2018 State Solicitation at 20-21); *id.* at AR01186 (FY 2018 Local Solicitation at 20). Specifically, the FY 2018 Solicitation included the following language under the header "BJA Areas of Emphasis":

> BJA recognizes that many state and local criminal justice systems currently face challenging fiscal environments and that an important, cost-effective way to relieve those pressures is to share or leverage resources through cooperation among federal, state, and local law enforcement. BJA intends to focus much of its work on the areas of emphasis described below, and *encourages each state recipient of an FY 2018 JAG award to join federal law enforcement agencies across the board in addressing these challenges*.

> *Id.* at AR01235 (FY 2018 State Solicitation at 12) (emphasis added); s*ee also id.* at AR01178 (FY 2018 Local Solicitation at 12).

After this preamble, BJA then enumerated its areas of interest within the universe established by 34 U.S.C. § 10152(a)(1)(A-H), prefacing each identified area with language of "encouragement" not obligation. *Id.* at AR01235-AR01236 (FY 2018 State Solicitation at 12-13); s*ee also id.* at AR01178-AR01179 (FY 2018 Local Solicitation at 12-13). Nowhere is this more evident than in BJA's statements regarding "Border Security":

- **Border Security**: "BJA *encourages* states to enhance border, waterway, and port security by using JAG funds to support law enforcement hiring, training, and technology enhancement, as well as cooperation and coordination among federal, state, local, and tribal law enforcement agencies." *Id.* at AR01236 (FY 2018 State Solicitation at 13) (emphasis added); s*ee also id.* at AR01179 (FY 2018 Local Solicitation at 13).

Defendants' proffered interpretation of "priority purposes" cannot be reconciled with their own practice and this Court should reject it.

---

[32] Pls.' FY 2017 Reply at 15 n. 16 (detailing history of grantees' required comprehensive plans).

Further, Defendants' assertion that 34 U.S.C. 10152(a)(2) somehow authorizes immigration-related grant conditions is also meritless. In Byrne JAG, Congress consolidated two related grant programs: the prior Byrne formula grant program, 42 U.S.C. § 3751 (2000), and the Local Law Enforcement Block Grant program that was appropriated pursuant to the terms of H.R. 728, 104th Cong. (1995) by the Departments of Commerce, Justice, State, the Judiciary, and Related Agencies Appropriations Act, Pub. L. No. 104-134, §101, 110 Stat. 1321, 1321-22 (1996). Given that nearly 40 authorized *purposes* for those funds had been put in statute over the years, Congress decided to "consolidate[] the current . . . purposes . . . into six broad purposes," but also assured grantees that their uses of funds would not be de-authorized. H.R. Rep. 109-233, at 89 (2005) (noting that consolidated purposes were "intended to cover the same ground while giving more flexibility to use the grants constructively"). That is what Section 10152(a)(2) does. It does not carry forward any conditions on funding, which would have to be stated expressly. Indeed, Defendants' reference to 42 U.S.C. § 3753(a)(11) (as in effect before January 5, 2006) merely confirms that, when Congress wants to place an immigration-related condition on Byrne JAG formula funds, it does so expressly.

## III. The Additional Conditions Violate 34 U.S.C. § 10228(a).

This Court should hold that the Additional Conditions violate 34 U.S.C. § 10228(a). Despite filing three legal memoranda in this case, Defendants have never meaningfully disputed Plaintiffs' arguments, *see* Pls.' FY 2018 Mem. at 21, that 34 U.S.C. § 10228(a) forbids Defendants from using the Byrne JAG program to control state and local officers' communications or otherwise convert state and local police into arms of federal immigration enforcement.[33] As the

---

[33] As Plaintiffs explain *supra* Section II.A, the legal conclusions already reached by this Court are dispositive of the legality of the new FY 2018 conditions, and the Court need go no further here. The Third Circuit's decision in *City of Philadelphia* demonstrates that Section 10228(a) provides additional support for this Court's conclusions. *See* 916 F.3d at 290-91 (rejecting Defendants' construction of the applicable-laws language in 34 U.S.C. § 10153(a)(5)(D) to

17

Third Circuit has explained, authorizing federal officials to direct, supervise, or control state or local officers' communications would violate Section 10228(a)'s "plain terms." *See City of Philadelphia*, 916 F.3d at 290-91. The Additional Conditions do that and more: not only do they direct state and local officials' communications by compelling them not to make certain statements, and to obtain and report certain information to federal officials, they also enlist states and localities to enforce a federal regulatory scheme. *See* Pls.' FY 2018 Mem. at 22-23.

Defendants respond with the same generic statement they invoked in the last round of summary judgment briefing in this case: grant programs are voluntary. Defs.' FY 2018 Opp'n at 19; *see also* Pls.' FY 2018 Mem. at 21 n.40. But Congress enacted Section 10228(a) precisely to constrain Defendants' power in connection with grant-making.

Defendants now argue that "requiring modest cooperation" is not "exercising 'direction, supervision, or control,'" Defs.' FY 2018 Opp'n at 19, but do not explain how being "required" to "cooperate" is any different from being *directed* or *controlled.* "We need consult only an ordinary dictionary to confirm that a typical definition of 'control' is: 'To exercise authority over; direct; command.'" *In re Weber*, 719 F.3d 72, 79 (2d Cir. 2013) (internal citation omitted). Defendants are in substance asserting authority to direct and command state and local police to assist in federal immigration enforcement—including whether and how state and local officials communicate with federal officials to help them enforce federal law. Defendants claim that this is permissible because the quantum of cooperation they seek to extract is purportedly "modest." But there is no "modesty" exception in Section 10228(a)'s text. Indeed, the statutory text, which proscribes "*any* supervision, direction, or control," strongly suggests no such exception exists.[34] *See Ali v. Federal Bureau of*

---

[34] include 8 U.S.C. § 1373 in part because Defendants' construction would enable "direction, supervision, or control" in violation of 34 U.S.C. § 10228(a)).

[34] "Nothing in this chapter or *any* other Act shall be construed to authorize *any* department, agency, officer, or employee of the United States to exercise *any* direction, supervision, or control over *any* police force or *any* other

*Prisons*, 552 U.S. 214, 218-19 (2008). Indeed, Defendants' argument on this score is so "bereft of any explanation of why the language of the statute compels such a reading," *Smith ex rel. Est. of Smith v. Fed. Reserve Bank of New York*, 346 F.3d 264, 270 (2d Cir. 2003), that the Court can and should reject it on that basis. *See also Herman v. RSR Sec. Services, Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (rejecting "conclusory arguments, with no support in legal theory"). After three briefs in this court alone, Defendants have offered no argument based on the statute's text, structure, purpose, or history that supports their view, nor have they offered any rebuttal to Plaintiffs' detailed articulation of Section 10228(a)'s meaning. "Three bites at the apple is enough." *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (internal citation omitted).

Congress's creation of the National Institute of Justice ("NIJ") does not help Defendants' position. Defs.' FY 2018 Opp'n at 19. For one thing, Congress enacted Section 10228(a) to prevent any program in "*this chapter*" from being used to turn states and localities into arms of federal law enforcement—and "this chapter" includes both Byrne JAG and NIJ programs. *See* 34 U.S.C. Subt. I, Ch. 101.[35] Thus, Section 10228(a) limits Defendants' authority under the NIJ statute—not the other way around. For another, the NIJ statute is simply irrelevant here. NIJ's purpose is to "provide for and encourage research and demonstration efforts" in improving criminal justice. 34 U.S.C. § 10121. In carrying out that purpose, NIJ may issue its own grants, *see id.* § 10122(c)(1),

---

criminal justice agency of *any* State or *any* political subdivision thereof." 34 U.S.C. § 10228(a) (emphases added).

[35] Congress has maintained this basic structure since the 1968 Act. In Title I of the 1968 Act, Part C contained block grants and Part D contained research grants. *See* Pub. L. No. 90-351, Title I, Pts. C & D. Both were followed by what is now Section 10228(a), which was Section 518(a) and located in Part E of the Act as one of many administrative provisions governing DOJ's administration of the 1968 Act. *Id.* Pt. E. When Congress in 1979 reorganized Title I of the 1968 Act, a simplified formula-grant structure appeared as Part D and the National Institute of Justice was created with research-grant authority in Part B. *See* Justice System Improvement Act, Pub. L. No. 96-157, § 2, 93 Stat. 1167, 1172; *see also* 93. Stat. at 1179. Administrative provisions were contained in Part H, *see* 93 Stat. at 1201, including what is now Section 10228(a), *see* 93 Stat. at 1206.

and conduct research, *see id.* § 10122(c)(2). That the NIJ statute houses a separate grant program strongly suggests Congress did not intend it to enlarge Defendants' powers over Byrne JAG, a formula grant program located elsewhere. *See City of Chicago*, 888 F.3d at 286. Moreover, Defendants cite language about "cooperation" among levels of government, *see* Defs.' FY 2018 Opp'n at 19-20, but ignore that it refers only to permissible goals of NIJ's "multiyear and short-term research and development," not any power to force Byrne JAG grantees to cooperate with federal immigration enforcement, *see* 34 U.S.C. § 10122(c)(2)(F).

**IV.    Defendants' Imposition of the Additional Conditions Violates the Constitution's Separation of Powers.**

This Court already has held that, because Defendants lack authority to impose the FY 2017 Original Conditions on Byrne-JAG funding, their doing so violates the separation of powers. *New York*, 343 F. Supp. 3d at 238. The same result follows here. Defendants concede that the Court's prior ruling disposes of the FY 2018 Notice, Access, and Section 1373/1644 conditions for purposes of this motion. And, as Plaintiffs have explained, the Additional Conditions are unlawful essentially for the same reason the Court concluded the FY 2017 Original Conditions were unlawful: Congress has directed that Byrne JAG funds be expended in a certain manner, and it has not allowed the Executive to withhold these vital funds because of the Executive's own immigration policy preferences.

**V.    Defendants' Decision to Impose the Additional Conditions was Arbitrary and Capricious.**

Like Defendants' imposition of the Original Conditions, their imposition of the Additional Conditions on FY 2018 Byrne JAG funds is arbitrary and capricious and must be set aside. *See* 5 U.S.C. § 706(2)(A). Defendants' suggestion that grant conditions are entirely exempt from arbitrary-and-capricious review, *see* Defs.' FY 2018 Opp'n at 24, is flatly wrong. The

Administrative Procedure Act ("APA") establishes a "strong presumption in favor of judicial review," *Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008), and agency action shall be set aside if it is "arbitrary, capricious, [or] an abuse of discretion," 5 U.S.C. § 706(2)(A). Courts frequently review agency action in connection with grant-making and administration. *See, e.g.*, *Planned Parenthood of N.Y.C., Inc. v. United States HHS*, 337 F. Supp. 3d 308, 324-325 (S.D.N.Y. 2018) (applying APA review to an agency's proposed allocation of appropriated grant funds); *Planned Parenthood of Wis., Inc. v. Azar*, 316 F. Supp. 3d 291, 298 (D.D.C. 2018) (applying judicial review to an agency's grant funding announcement).

Defendants further argue that the imposition of the Additional Conditions satisfies arbitrary-and-capricious review because "it is reasonable for OJP to deny federal law enforcement funding" based on a grantee's cooperation with federal civil immigration enforcement activities. Defs.' FY 2018 Opp'n at 24. Nothing in the Byrne JAG statute suggests Congress intended Defendants to consider such a factor in administering the program—let alone to make such a factor determinative of whether a grantee receives funding at all. *See supra* Section II.A; *New York*, 343 F. Supp. 3d at 227-31; *see also City of Philadelphia,* 916 F.3d at 284-291; *Chicago*, 888 F.3d at 283-87; *California Actions*, 349 F. Supp. 3d at 944-48, 954-55. Defendants thus rely on "factors which Congress has not intended [the agency] to consider" in violation of the APA. *Motor Vehicle Mfrs. Ass'n of U.S., Inc., v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Like the Original Conditions, the FY 2018 Byrne JAG program's Additional Conditions are also arbitrary and capricious because Defendants have failed to offer any reasoned explanation for their recent, dramatic departure from the requirements of prior Byrne JAG iterations. When an agency changes course from a prior, longstanding practice, it must acknowledge the change and provide a reasoned basis for departing from that prior practice—as the Court has already

articulated. *New York*, 343 F. Supp. 3d at 239 (quoting *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (when an agency deviates from past practice, "it must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'") (citation omitted)).

Plaintiffs have relied on Byrne JAG funding since the program's inception, Pls.' 56.1 ¶ 254, and have never been compelled to comply with extra-statutory requirements that conscript their officials to serve as arms of federal immigration enforcement agencies. And as recently as 2015, Defendants even stated that they lacked the "discretion to suspend funding" on "formula based grants" by requiring states and localities to "affirmatively certify" that they comply with federal immigration enforcement actions. *See* Trasande/Holt Ex. 62 at AR00112-AR00113 (*Letter from Assistant Attorney General Peter K. Kadzik to Senator Richard Shelby*, at 1-2 (Sept. 10, 2015)). Although Defendants insist that their reasons for imposing the Additional Conditions "were entirely rational," Defs.' FY 2018 Opp'n at 24 (citation omitted), Defendants still—despite multiple rounds of briefing—refuse to "display" even basic "awareness" of their change in position. The Additional Conditions thus are arbitrary and capricious under *Encino Motorcars*.

Moreover, the Administrative Record submitted by Defendants does not establish the purported reasonableness of the FY 2018 Byrne JAG Additional Conditions. Defendants once again have failed to consider "an important aspect of the problem" or to show good reasons for the new policies. *State Farm*, 463 U.S. at 43 (agency action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem."). Like its predecessor, the FY 2018 Administrative Record contains no evidence that Defendants considered what impact the conditions at issue would have on "undermin[ing] trust and cooperation between local communities and government, or the extent to which this would harm public welfare or frustrate

local law enforcement." *New York*, 343 F. Supp. 3d at 241; *see also Chicago*, 888 F. 3d at 291 (noting that states and localities "have concluded that the safety of their communities is furthered by a relationship of trust with the undocumented persons and lawful immigrants residing therein" and that "[s]uch trust, once destroyed by the mandated cooperation with the federal immigration authorities, would not easily be restored"). As with the FY 2017 record, absent from the FY 2018 Administrative Record is any consideration of the harms the Additional Conditions would cause to state and local governments and the "underserved local populations who benefit" from the Byrne JAG program. *New York*, 343 F. Supp. 3d at 240-41 (quoting from AR00113 attached at Trasande/Holt Decl. Ex. 62). This Court has already concluded that the documents that Defendants invoke[36] do not justify the imposition of the Original Conditions for the purposes of arbitrary-and-capricious review. *See New York*, 343 F. Supp. 3d at 238-41. The same result follows for the Additional Conditions. Defendants offer a single, anecdotal tweet by a single person in another state to justify a far-reaching, national condition imposed on all grantees. *See* Defs.' FY 2018 Opp'n at 25; Pls.' FY 2018 Mem. at 9 (describing Communication Prohibition condition). But nothing in the record suggests Defendants have good reasons for imposing this new, expansive requirement on all grantees when they have never done so previously. *See California Actions II*, 2019 WL 1024404, at *16 (finding that the FY 2018 administrative record "has not provided an articulated basis for the [Communication Prohibition] as drafted. Defendants' justification and reliance on the social media posts without more, does not establish a "'product of reasoned decision

---

[36] Defendants again refer to the 2016 DOJ Inspector General memorandum, a subsequent 2016 OJP memorandum, and a Backgrounder to justify the Additional Conditions. *See* Defs.' FY 2018 Opp'n at 24-25 (citing AR00366; AR00392-AR00397; AR00993). These documents were used to justify the Original Conditions. 343 F. Supp. 3d at 239. Defendants also again refer to the Declaration of Francisco Madrigal an Immigration and Customs Enforcement Officer in support of the Original and Additional Conditions. Defs.' FY 2018 Opp'n at 2-3. Notwithstanding, this declaration and any evidence of safety impact remain absent from the applicable administrative record, prohibiting this Court's consideration of it again. 343 F. Supp. 3d at 239, n. 24 (citing *Citizens Against Casino Gambling in Erie Cty. v. Chaudhuri*, 802 F.3d 267, 279 (2d Cir. 2015) (stating that review is "limited to examining the administrative record" (quoting *NRDC v. Muszynski*, 268 F.3d 91, 97 (2d Cir. 2001))).

making.'") (internal citations omitted).

## VI. The Additional Conditions Violate the Spending Clause.

Even if Congress delegated to Defendants the authority to impose conditions on Byrne JAG funding, which this Court has already held it did not, Congress's power to place conditions on funding to states and localities is not absolute. *See New York*, 343 F. Supp. 3d at 231 (noting that the "malleable language" of the Byrne JAG statute "does not provide the 'clear notice that would be needed to attach such a condition to a State's receipt of … funds'" (quoting *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 647 (E.D. Pa. 2017) (citation omitted)); *see also California Actions*, 349 F. Supp. 3d at 961 (holding that the FY 2018 immigration-related conditions violate the Spending Clause); *City of Philadelphia*, 309 F.Supp.3d at 325 (holding that the FY 2017 immigration-related conditions violate the Spending Clause). It is well-established that grant conditions must be related to the purpose of the federal program and must be unambiguous. *See, e.g.*, *South Dakota v. Dole*, 483 U.S. 203, 207 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). The FY 2018 Additional Conditions fail on both counts.[37]

### A. The Additional Conditions are Neither Related to, Nor Sufficiently Tailored to Address, the Particular Purpose of the Byrne-JAG Program.

The Spending Clause requires conditions on federal funding to be related to the specific federal interest in the project or program to which they are attached. *Dole*, 483 U.S. at 207-08. The purpose of the Byrne JAG statute is to enhance *local* criminal justice efforts by providing "fiscal

---

[37] In prior briefing, New York City argued that Defendants' imposition of the Original Conditions on FY 2017 Byrne JAG awards violates the Spending Clause. Pls.' FY 2017 Reply at 38-43. This Court did not address these arguments, as the motion was resolved on other grounds. *New York*, 343 F. Supp. 3d at 245. Plaintiffs incorporate by reference all of their previous arguments, with respect to the FY 2018 Sections 1373/1644, Access, and Notice Conditions, which suffer the same infirmities as the FY 2017 Original Conditions. *See* Pls.' FY 2017 Reply at 38-43.

assistance to states and localities for any of a wide variety of permissible purposes … not the Attorney General's interest in public safety or immigration enforcement, which is not mentioned in the statute." *City of Philadelphia*, 280 F. Supp. 3d at 643; *see also New York*, 343 F. Supp. 3d at 221 (noting that Byrne JAG funds can be applied towards "criminal justice programs in a variety of categories, including law enforcement, prosecution, crime prevention, corrections, drug treatment, technology, victim and witness services, and mental health").

Criminal law and criminal justice programming are inherently local in nature. In contrast, immigration enforcement is fundamentally an area of civil—not criminal—law and is a function of federal—not state or local—government. *See Arizona v. United States*, 567 U.S. 387, 396 (2012). Though "criminal law is integral to federal immigration law, … it is not a two-way street; immigration law does not impact local law enforcement's administration and enforcement efforts in the criminal justice system." *California Actions*, 349 F. Supp. 3d at 959. As the *City of Philadelphia* court found: "Immigration law has nothing to do with the enforcement of local criminal laws." *City of Philadelphia*, 280 F. Supp. 3d at 642. Beyond being unrelated to the Byrne JAG program's goal of supporting policing and crime-reduction policies tailored to local needs, the immigration-related conditions Defendants seek to impose do violence to it. The very policies Defendants seek to restrict through the Additional Conditions help New York City combat crime and keep its residents safe. Pls.' 56.1 ¶¶ 180-89 (ECF No. 23).

Defendants argue that the conditions promote "immigration enforcement" and therefore intersect with the criminal justice purposes of the Byrne JAG Program. *See* Defs.' FY 2018 Opp'n at 21. Defendants' argument that mere intersection is sufficient to establish relatedness under the Spending Clause has been soundly rejected. *California Actions*, 349 F. Supp. 3d at 959; *City of Philadelphia*, 280 F. Supp. 3d at 642.

Because conditions related to the enforcement of federal, civil immigration law are unrelated to the goals and purposes of Byrne JAG grants, they violate the Spending Clause.

### B. The Additional Conditions are Unconstitutionally Ambiguous.

The Additional Conditions also violate the Spending Clause because their ambiguity contravenes the requirement that Congress condition the states' receipt of federal funds "'unambiguously…, enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation.'" *Dole*, 483 U.S. at 207 (quoting *Pennhurst*, 451 U.S. at 17.

The Communication Prohibition is impermissibly ambiguous because, as the *California* court found, it "require[s] grantees to comply with the unexplained and unbounded discretion of the [Assistant Attorney General] to avoid indirect attempts to disclose [law enforcement] information." *California Actions II*, 2019 WL 1024404, at *13 (quoting *Pennhurst*, 451 U.S. at 17). Defendants point to various "Rules of Construction" contained in the State's FY 2018 Byrne JAG Award Approval Letter to argue the Communication Prohibition is not ambiguous. Defs.' FY 2018 Opp'n at 22. However, the definitions included in the Rules of Construction do little to help a grantee "ascertain what is expected of it," *Pennhurst*, 451 U.S. at 17, and in fact make the condition even more ambiguous. For example, the Rules of Construction define "law enforcement information," to include *any* information that might *ever* flow from the federal government under *any* circumstance. Trasande/Holt Decl. Ex. 53, ECF No. 102-1 (FY 2018 Special Condition ¶ 44). Notably, the Rules of Construction do not define, and Defendants have offered no other explanation of what constitutes an "indirect" attempt to "conceal" an undocumented person. *Id.*

The Certification of Compliance with Additional Statutes is similarly ambiguous. Defendants fail to specify what types of laws, rules, policies or practices "*impede* the exercise by federal officers of authority" relating to certain immigration-related statutes. *See* Trasande/Holt

Decl. Ex. 76 at AR01210-AR01211 (Appendix C, FY 2018 Local Solicitation at 44-45) (emphasis added). As an initial matter, there are no Rules of Construction for the Certification of Compliance with Additional Statutes. *Id.* Moreover, even when considering the Rules of Construction accompanying other FY 2018 conditions, the definition of "impede" leaves open for interpretation what might constitute a "significant delay" or a "complicat[ion]" of the exercise of a federal officer's authority. *See* Trasande/Holt Decl. Ex. 53, ECF No. 102-1 (FY 2018 Special Condition ¶ 45) (defining "impede" as "taking or continuing any action, or implementing or maintaining any law, policy, rule, or practice, that … is designed to prevent or to significantly delay or complicate, or…has the effect of preventing or of significantly delaying or complicating"). Plaintiffs have no basis to know whether Defendants would view a particular policy as "impeding" their authority.

Because both the Communication Prohibition and the Certification of Compliance with Additional Statutes leave Plaintiffs unable to determine how to comply with these conditions, they are impermissibly ambiguous in contravention of the Spending Clause.[38] *See Pennhurst*, 451 U.S. at 17.

## VII. Plaintiffs Are Entitled to Declaratory, Mandamus, and Injunctive Relief.

Defendants do not dispute that Plaintiffs meet the conditions for a permanent injunction: (1) that they have suffered an irreparable injury, (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) that an equitable remedy is

---

[38] The ambiguity of these conditions goes beyond "marginal uncertainty" and is clearly distinguishable from the cases on which Defendants rely, which upheld the funding condition in the Religious Land Use and Institutionalized Persons Act ("RLUIPA") that required states to comply with the least restrictive means test when imposing a substantial burden on the religious exercise of a prisoner. Defs.' FY 2018 Opp'n at 23. The RLUIPA condition was explicitly provided for in the language of the statute, *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002), which as discussed above, is not the case here. Furthermore, the RLUIPA condition's "least restrictive means test" is a codified and familiar standard to which states could tailor their compliance. *Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004); *Charles v. Verhagen*, 348 F.3d 601, 608 (7th Cir. 2003); *Van Wyhe v. Reisch*, 581 F.3d 639, 650-51 (8th Cir. 2009). In contrast, the Additional Conditions impose novel standards for which there is no statutory guidance, leaving Plaintiffs without notice of the obligations incurred by accepting Byrne JAG funds.

warranted in light of the balance of hardships between the plaintiff and defendant, and (4) that the public interest would not be disserved by a permanent injunction. *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 422 (2d Cir. 2013) (citations omitted). The Court has already held that these conditions were satisfied with regard to the FY 2017 funds, and the Court should reach the same conclusion here. *See New York*, 343 F. Supp. 3d at 243.

Rather, Defendants argue only that any injunction granted should be limited to the Plaintiffs and their political subdivisions. This is consistent with what Plaintiffs seek in their motion and what this Court has already granted. *See* Pls.' FY 2018 Mem. at 31; *New York*, 343 F. Supp. 3d at 245 n.28 (citing *California ex rel. Becerra v. Sessions*, No. 17 Civ. 04701 (WHO), 2018 WL 6069940, at *1 (N.D. Cal. Nov. 20, 2018)). Plaintiffs reiterate that they are merely asking that the Court do what it has already done with respect to the FY 2017 Original Conditions again— this time with respect to the FY 2018 Additional Conditions. *See Uccio*, 940 F.2d at 758.

For the reasons set forth above, this Court should also issue a declaratory judgment finding that the FY 2018 Additional Conditions are unlawful and unconstitutional, as well as a writ of mandamus compelling Defendants to disburse the State Plaintiffs' FY 2018 awards as Defendants would in the ordinary course, without regard to the challenged conditions. With respect to the City, Defendants should be compelled to issue and thereafter disburse the City's award as Defendants would in the ordinary course, without regard to the challenged conditions. This Court has already acted similarly with regard to the FY 2017 Original Conditions. *See New York*, 343 F. Supp. 3d at 245-46. Defendants offer no argument as to why the Court should not do the same with regard to the FY 2018 Additional Conditions. *See Uccio*, 940 F.2d at 758.

# CONCLUSION

For the reasons set forth above, the Court should grant summary judgment to State Plaintiffs on Counts VI through X of their Amended Complaint (ECF No. 32) and grant summary judgment to the City on Counts VI-VIII and X of their Amended Complaint (18-cv-6474 (ER), ECF No. 15). The Court should also issue a declaratory judgment that all of the immigration-related conditions imposed in FY 2018 are unlawful and a permanent injunction enjoining Defendants from imposing these conditions on Plaintiff States and all other FY 2018 Byrne JAG applicants located in Plaintiff States, including New York City. The unlawful FY 2018 immigration-related conditions include the Notice (Trasande/Holt Decl. Ex. 53 (FY 2018 Special Conditions ¶ 46)), Access (Trasande/Holt Decl. Ex. 53 (FY 2018 Special Condition ¶ 45)), and Section 1373/1644 Conditions (Trasande/Holt Decl. Ex. 53 (FY 2018 Special Conditions ¶¶ 41-43)) carried over from FY 2017 as well as the Communication Prohibition (Trasande/Holt Decl. Ex. 53 (Special Condition ¶ 44)), Policy Collection and Reporting Condition (Trasande/Holt Decl. Ex. 53 (Special Conditions ¶ 47)), and Certification of Compliance with Additional Statutes newly imposed in FY 2018 (Trasande/Holt Decl. Ex. 76-77 at AR01206-AR01211 (Appendices A-C, Local Solicitation at 40-45); AR01263-AR01268 (Appendices A-C, State Solicitation at 40-45)). Further, the Court should issue a writ of mandamus directing Defendants to issue and thereafter disburse New York City's FY 2018 JAG award letter and corresponding funds and to immediately disburse State Plaintiffs' FY 2018 Byrne JAG awards as they would in the ordinary course, without regard to the challenged conditions. The Court may award other relief as it deems just and proper.

New York, NY  
Dated: May 3, 2019

Respectfully submitted,

**LETITIA JAMES**  
*Attorney General*  
*State of New York*

By: /s/ Nancy M. Trasande  
Matthew Colangelo,[†] Chief Counsel  
Lilia Toson,[†] Assistant Attorney General  
Nancy M. Trasande,[†] Assistant Attorney General  
Conor Duffy, [†] Assistant Attorney General  
Civil Rights Bureau  
28 Liberty St., 20th Floor  
New York, NY 10005  
Matthew.Colangelo@ag.ny.gov  
Lilia.Toson@ag.ny.gov  
Nancy.Trasande@ag.ny.gov  
Conor.Duffy@ag.ny.gov  
Phone: (212) 416-6057

Eric R. Haren,[†]  
Special Counsel to the Solicitor General

*Of Counsel*

**DEBEVOISE & PLIMPTON LLP**  
919 Third Avenue  
New York, NY 10022  
Tel: (212) 909-6077  
jhamid@debevoise.com

By: /s/ Jyotin Hamid  
Jyotin Hamid[†]  
Meryl Holt[†]  
Dana Rehnquist[†]  
Alexandra N. Mogul[†]

*Attorneys for Plaintiff the City of New York*

**ZACHARY W. CARTER**  
Corporation Counsel of the City of New York  
100 Church Street  
New York, NY 10007  
Tel: (212) 356-2296  
dbernhar@law.nyc.gov

By: /s/ Doris Bernhardt  
Doris Bernhardt[†]  
Tonya Jenerette[†]  
Sabita Krishnan[†]  
Gail Rubin[†]

**MAURA HEALEY**
*Attorney General*
*Commonwealth of Massachusetts*

By: /s/ Jonathan Miller
Jonathan Miller,[†] Chief, Public Protection and
Advocacy Bureau
Genevieve C. Nadeau,[†] Chief, Civil Rights
Division
One Ashburton Place
Boston, MA 02108
Jonathan.Miller@state.ma.us
Genevieve.Nadeau@state.ma.us
Phone: (617) 727-2200

**WILLIAM TONG**
*Attorney General*
*State of Connecticut*

By: /s/ Mark F. Kohler
Mark F. Kohler,[‡] Assistant Attorney General
Michael Skold,[‡] Assistant Attorney General
55 Elm St., P.O. Box 120
Hartford, CT 06141-0120
Mark.Kohler@ct.gov
Michael.Skold@ct.gov
Phone: (860) 808-5020

**GURBIR S. GREWAL**
*Attorney General*
*State of New Jersey*

By: /s/ Glenn Moramarco
Glenn Moramarco,[‡]
Assistant Attorney General
Richard J. Hughes Justice Complex
25 Market Street, 8th Floor
Trenton, NJ 08625-0116
Phone: (609) 376-3235
Glenn.Moramarco@law.njoag.gov

**PETER NERONHA**
*Attorney General*
*State of Rhode Island*

By: /s/ Michael W. Field
Michael W. Field,[‡] Assistant Attorney General
The State of Rhode Island
Office of the Attorney General
150 South Main Street
Providence, Rhode Island 02903
Phone: (401) 274-4400, Ext: 2380
mfield@riag.ri.gov

**MARK R. HERRING**
*Attorney General*
*Commonwealth of Virginia*

By: /s/ Victoria Pearson
Victoria Pearson,[‡]
Deputy Attorney General
202 North 9th Street
Richmond, VA 23219
Phone: (804) 786-4319
VPearson@oag.state.va.us

**ROBERT W. FERGUSON**
*Attorney General*
*State of Washington*

By: /s/ Luke Eaton
Luke Eaton[‡]
Assistant Attorney General
P.O. Box 40100
Olympia, WA 98504-0100
Phone: (360) 753-6200
LukeE1@atg.wa.gov

[†]Admitted in the S.D.N.Y.
[‡] Admitted *pro hac vice*